THE STATE, EX REL. CHARLES BOTT ET AL., v. THE BOARD OF REGISTRY AND ELECTION IN SIXTH PRECINCT OF THE FIRST WARD OF JERSEY CITY.

1. Whether, after the governor of the state, in execution of the duty imposed upon him by an act of the legislature, has issued his proclamation that a proposed constitutional amendment has received a majority vote of the people and has become a part of the state constitution, this court can order a recount of the popular vote, is a question upon which no opinion is expressed.

2. The election at which the constitutional amendment was submitted to the vote of the people did not affect any individual or private right. It concerned the government alone. Public policy, therefore, is to be primarily regarded in considering an application for a recount of the votes.

3. The legislature, by the act under which this amendment was submitted to the popular vote, having declared how that vote should be canvassed, made it the duty of the governor, after determining that the amendment had received a majority vote, to issue a proclamation forthwith, declaring that it had been adopted by the people. This was a declaration by the legislature that, so far as the government was concerned, public policy required that the question should be at rest when the chief executive had performed the duty imposed upon him by the statute.

4. If the power inheres in this court to order the *mandamus* applied for, it would require a very clear case to induce the court to intervene for the purpose of reopening the count and subjecting to litigation a subject of such paramount importance.

On application for *mandamus.*

Argued at November Term, 1897, before Justices VAN SYCKEL, DIXON and COLLINS.

For the application, *William D. Edwards* and *Allan L. McDermott.*

*Contra, Samuel H. Grey,* attorney-general.

The opinion of the court was delivered by .

VAN SYCKEL, J. This is an application for a peremptory writ of *mandamus* to be directed to the board of registry and election, commanding said board to reconvene and count the ballots cast at said election for the proposed constitutional amendment against gambling.

Whether, after the governor's proclamation that the said amendment has become part of the fundamental law of this state, this court can order a recount of the votes, is a question upon which we express no opinion.

If we have the power to grant the application in virtue of the common law jurisdiction inherent in the court to superintend inferior tribunals in the exercise of their functions, we decline to do so in this case.

This election did not affect any individual or private right. It concerned the government alone, and in it the relators have no interest other than that which is common to all citizens of the state.

Public policy, therefore, is to be primarily regarded in the discussion of this application.

The legislature, by the act of May 25th, 1897, under which this amendment was submitted to the popular vote, declared how that vote should be canvassed, and made it the duty of the governor, after determining that the amendment had received a majority vote, to issue a proclamation forthwith, declaring that it had been adopted by the people. This was a declaration by the legislature that, so far as the government was concerned, public policy required that the question should be at rest when the chief executive of the state had performed the duty imposed upon him by the statute. That verification of the correctness of the result satisfied the state, and it should be held to satisfy the relators.

By the mandate of the legislature the amendment has become incorporated in the constitution of the state.

It should therefore require a very clear case to induce this court to intervene for the purpose of re-opening the count and

subjecting to litigation a subject of such paramount importance.

This consideration presses itself upon us with especial force when we recall the fact that no safeguard has as yet been devised by which frauds upon the ballot can be prevented.

The reasons for which the aid of the court is invoked in this case are far from satisfactory. The alleged facts upon which the application is based have been gathered by counsel and their clerks and agents from various sources, consisting in part of statements made to them by election officers in respect to ballots some weeks after they had inspected such ballots in the course of making the count on the day of the election. These statements as presented to us are mere hearsay and cannot justify favorable consideration.

But if the evidence submitted on the part of the relators was more satisfactory, there is still a cogent reason for refusing to allow another count.

It became necessary to use the ballot-boxes in which these ballots were sealed for the purposes of the state elections held on the 2d day of November.

The ballots were, therefore, removed from the ballot-boxes and placed in the custody of various officials throughout the state. To some extent, at least, the safeguards against tampering with these ballots were thereby diminished, and there is now less assurance that the ballots will be found to be in the same condition in which they were when counted orginally than there would be if they had not been removed from the ballot-boxes.

The relators have permitted the situation to change before they made their application, although the governor postponed the issuing of his proclamation to give anyone who desired to do so an opportunity to contest the adoption of this amendment.

The application is denied.